IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CRAIG ALLEN GROSS, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:19-CV-0504-DGK-SSA |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Craig Gross's applications for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had several severe physical and mental impairments, but he retained the residual functional capacity ("RFC") to work as a photocopy machine operator, collator machine operator, and hand packager.

After carefully reviewing the record and the parties' arguments, the Court holds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his applications for disability insurance benefits and SSI on May 18, 2017, alleging a disability onset date of February 1, 2009. The Commissioner denied the applications at

the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing and, on November 9, 2018, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on April 30, 2019, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin, 789 F.3d 847, 852* (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S.Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or

medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at Step Four in determining his physical limitations and erred at Step Five in finding the Commissioner sustained his burden of identifying other jobs he could perform.

I.      The ALJ did not err at Step Four.

Plaintiff first argues that the ALJ erred at Step Four because his decision is "silent" as to the opinion of his treating physician, John Campobasso, D.O. Because Dr. Campobasso opined Plaintiff was incapable of any gainful employment since he would not be dependable to do any physical activity or tolerate prolonged sitting or standing because of generalized pain, Plaintiff contends this silence is reversible error.

The record shows that on October 27, 2016, Plaintiff visited Dr. Campobasso to "discuss possible fibromyalgia and temporary disability." R. at 362. The doctor wrote in a treatment note, "Believe [Plaintiff] is incapable of any gainful employment at this time since he would not be dependable to do any physical activity or have prolonged sitting or standing because of his generalized pain." R. at 363. When he saw Plaintiff on May 1, 2018, Dr. Campobasso noted the reason for the appointment was "Discuss disability/medication." R. at 633. The doctor reported there was "[d]iscussion with the patient that he needs a letter written to the Social Security department to attest to the fact that he does have fibromyalgia. I agreed to write this letter for him." The doctor's records do not include a letter to the Social Security Administration, but there

---

medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

is a June 19, 2018, letter addressed "To Whom It May Concern." R. at 635. This one sentence letter states: "Due to chronic daily muscular and joint pain and due to chronic emotional psycho symptoms I believe this patient would be unfit to serve on a jury." *Id.*

With respect to Dr. Campobasso's opinion, the ALJ noted the doctor

> opined that due to chronic daily muscular and joint pain, and due to chronic emotional-psycho psycho symptoms, the claimant would be unfit to serve on a jury. This opinion is not found [to] be persuasive, as it does not provide a function-by-function assessment of the limitations imposed by the symptoms of the claimant's impairments.

R. at 23. The ALJ said nothing about Dr. Campobasso's October 27, 2016, treatment note, but in the next sentence affirmed that he had "considered all of the admitted evidence."

Although Plaintiff is correct that the ALJ's opinion is "silent" with respect to the October 27, 2016, treatment note, this was not error. As a threshold matter, the ALJ was not required to address this note because it was a vocational assessment on an issue reserved to the Commissioner, not medical-opinion evidence. *House v. Astrue,* 500 F.3d 741, 745 (8th Cir. 2007) (holding no deference given for an opinion that claimant is disabled because such an opinion invades the province of the Commissioner to make the ultimate disability determination).

Further, the ALJ did not err in discounting Dr. Campobasso's opinion, of which the treatment note is only one small part. His opinion was conclusory and not supported by a function-by-function assessment of Plaintiff's limitations or any other evidence supporting his conclusion. The doctor's opinion was also contradicted by much greater evidence in the record which the ALJ discussed at length. R. at 19-24. For example, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence. R. at 20. Among other things, the ALJ noted that although Plaintiff complained of difficulty using his hands, he also played video games and used a computer on a

regular basis, sometimes for as long as an hour or two. R. at 21, 76-77, 263, 268, 523-24. And it is well-established that an ALJ may discredit a medical opinion if that opinion is unsupported by the medical record. *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019). Hence, the ALJ did not err with respect to Dr. Campobasso's opinion.

Plaintiff's two other arguments alleging errors at Step Four—that the ALJ was required to further develop the record with respect to limitations stemming from his asthma and vision disorders, and that the ALJ failed to discuss whether Plaintiff was capable of sustained employment—are similarly unpersuasive. An ALJ does not need to obtain additional medical evidence so long as other evidence in the record provides a sufficient basis for the decision. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (holding a duty to fully develop the record "arises only if a crucial issue is undeveloped"). And "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). The record here contained sufficient information for the ALJ to make an informed decision regarding Plaintiff's capacity to sustain work, including disability, function, and work background reports; over 400 pages' worth of medical records from throughout the relevant period; and the hearing testimony. R. at 67-84, 224-87, 309, 312, 328-735. As noted above, the ALJ found inconsistencies throughout the record, and the evidence provided a sufficient basis for his decision. Thus, he had no duty to further develop the record or discuss in greater detail Plaintiff's ability to work on a sustained basis.

## II. The ALJ did not err at Step Five.

Plaintiff also contends the ALJ erred in finding the Commissioner sustained his burden at Step Five of identifying other jobs that exist in significant numbers in the national economy that he could perform. Plaintiff contends the basis for this finding, the vocational expert's ("VE") testimony, was flawed because it conflicted with information in the *Dictionary of Occupational Titles* (*"DOT"*), and the ALJ did not resolve the conflict between the two. Specifically, Plaintiff argues the first two jobs identified by the VE that he could perform, photocopy-machine operator and collator-machine operator, "require significant tending of machinery," and therefore violate the limitation restricting him to work that does not include frequent exposure to machinery. Plaintiff contends the third job identified, hand packager, requires visual examination of small items for such things as scratches and discoloration, which violates the RFC's prohibition against work involving reading fine print or working with small objects.

This argument is unpersuasive. As the Commissioner observed, while the first two jobs include "machine" in their titles, they do not involve the use of machinery. The restriction against working with machinery is not reasonably interpreted to preclude something as ordinary and generally benign as a copy machine or collator. Such equipment is not analogous to a table saw or a lathe, machines with potentially dangerous moving parts. Indeed, the *DOT* specifically indicates that moving machinery parts are not present in these occupations. § 207.685-014, 1991 WL 671745 (4th ed. Rev. 1991) (photocopying-machine operator); § 208.685-010, 1991 WL 671753 (4th ed. Rev. 1991) (collator operator). And given that there are over 200,000 of these jobs in the national economy, it is unnecessary to consider Plaintiff's argument that he cannot work as a hand packager. *See Welsh v. Colvin*, 765 F.3d 826, 930 (8th Cir. 2014) (finding the claimant could perform a significant number of jobs where 330 positions existed in the state and 36,000 existed nationally).

6

**Conclusion**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   June 18, 2020              /s/ Greg Kays
                                   GREG KAYS, JUDGE
                                   UNITED STATES DISTRICT COURT